UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 17-cr-244 WHO and |
|---|---|
| Plaintiff, | 18-cr-00604-WHO-1 |
| v. | **ORDER DENYING RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE** |
| ROBERT ZANDER SEATON, | Re: Dkt. No. 925 (Case No. 17-cr-244); No. 54 (Case No. 18-cr-604) |
| Defendant. | |

Robert Zander Seaton moves again for compassionate release because COVID-19 has reached FMC Rochester, which he fears puts him at grave risk for contracting the virus. In my initial Order Denying Compassionate Release, Dkt. Nos. 913, 53 ("First Order"), I stated that "to date FMC Rochester has not had any positive inmate tests." First Order at 3. But I also recognized that "that is no assurance that there will not be positive inmate tests in the future, and conditions while incarcerated are more risky than in one's home. At the same time, the state of Florida's COVID-19 rate is spiking at present, so release does not appear to be a significantly safer choice than FMC Rochester for Mr. Seaton." *Id.*

The basis of my ruling in the First Order was not that FMC Rochester was free of COVID-19. I recognized that Mr. Seaton has health concerns that put him at elevated risk and that it is safer to be at home than in prison. My denial of compassionate release hinged on consideration of the 18 U.S.C.§ 3553(a) factors. In the First Order, I detailed the charges in the two cases to which he pleaded guilty, his dishonesty in gaining admittance to this District's Conviction Alternatives Program, his repeated dishonesty while he was in the program, and his commission of the second drug trafficking crime while on pre-trial release. I noted that I substantially varied downward in

his sentence from 188 months at the low end of the Sentencing Guidelines to 120 months imprisonment on May 16, 2019 and that he had only served 23% of his sentence as of the time I considered his request for compassionate release. In conclusion, after recognizing Seaton's potential and my hopes for his rehabilitation, I wrote:

> But today, I do not think the sentencing goals of reflecting the seriousness of his crimes, promoting respect for the law, providing just punishment, deterring criminal conduct and protecting the public from future crime would be met if I released him. The nature and circumstances of his offense and his history and characteristics do not support release. FMC Rochester is well equipped to address his medical needs. Extraordinary and compelling reasons do not exist for his release. The motion is DENIED.

*Id.* at 4. That was three months ago.

When I received Mr. Seaton's renewed motion, recognizing his medical concerns I directed the government "to file one or more declarations from someone(s) with knowledge that describe how FMC Rochester is responding to the pandemic currently, including the steps it is taking to keep Mr. Seaton and other inmates healthy. The more specific the information is with respect to Mr. Seaton's status/treatment the better." Order Regarding Response, Dkt. Nos. 926, 55.

The government filed a 31-page declaration from Michelle Gielski, the Health Services Administrator at FMC Rochester, Dkt. Nos. 941, 60, that detailed the steps that the Bureau of Prisons generally, and FMC Rochester specifically, have taken during the pandemic to keep inmates healthy. These steps would seem appropriate. It confirms that some inmates and staff have tested positive for COVID. It is regularly testing inmates, including Mr. Seaton, every four days. It would appear that FMC Rochester is well equipped to address Mr. Seaton's medical needs.

That said, Mr. Seaton's counsel spoke with him on the telephone after receiving Gielski's declaration, and reports that the situation is deteriorating at FMC Rochester. His side of the conversation is repeated in a reply brief. I do not doubt that Mr. Seaton is fearful of the pandemic, that he has reason to be fearful, and that the facts as he experiences them are different than what would be expected in light of Gielski's declaration. But I cannot conclude from this record that he is likely to become infected by COVID-19 and be seriously impacted by it if he remains at FMC

Rochester. I suspect that many of the inmates there have serious medical conditions—it is a Federal Medical Center. Incarceration during this pandemic puts every inmate at greater risk than the general population. I do not minimize Mr. Seaton's medical conditions or his concerns, but compassionate release is only available for extraordinary and compelling reasons. Gielski's declaration demonstrates that FMC Rochester's protocols and procedures are better than he suggests, and that the facility is equipped to address his medical needs.

This leads me back to the 3553(a) factors, which have not changed in the last three months. Mr. Seaton cites *United States v Kauwe*, CR-14-00044, ECF Doc. 568 (D. Nev. Aug. 10, 2020), where the Hon. Miranda Du granted a motion for reconsideration of her initial order denying compassionate release. Kauwe had served roughly half of his 65-month sentence. He had no criminal history and no addiction issues. He had been on pretrial release for 3 ½ years without incident prior to sentencing. These factors supported Judge Du's conclusion that Kauwe was not a danger to the public and would follow the conditions of his release. Despite Mr. Seaton's eloquent Personal Statement attached to his motion, Dkt. 925-2, which I appreciate, I cannot draw the same conclusion as Judge Du. Mr. Seaton has served only a quarter of his 120-month sentence, he committed a second drug trafficking offense *while on pretrial release*, and he was dishonest in a program that offered the promise of avoiding incarceration as long as he was honest and met its conditions to address his addiction and criminal thinking issues.

For the reasons stated in the First Order and here, I DENY Mr. Seaton's renewed emergency motion for compassionate release.

**IT IS SO ORDERED.**

Dated: October 19, 2020

William H. Orrick
United States District Judge